**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN CENTER FOR LAW AND JUSTICE,** | |
| Plaintiff, | |
| v. | Civil Action No. 16-2516 (JEB) |
| **UNITED STATES DEPARTMENT OF STATE,** | |
| Defendant. | |

**MEMORANDUM OPINION**

Even if Rome could not be built in a day, Plaintiff American Center for Law and Justice believes that the government should be able to assess Freedom of Information Act requests in twenty. In the lead-up to this case, ACLJ asked Defendant Department of State for records pertaining to its funding of an organization that opposed Israeli Prime Minister Benjamin Netanyahu during that country's 2015 elections. FOIA allows federal agencies twenty days to decide whether to release information in response to such requests. That time passed, and State did not signal whether it would do so or not. Citing this infraction and other instances of delay, Plaintiff brought this action to challenge both the withholding of documents related to its specific request and Defendant's broader policy or practice of FOIA procrastination.

The Department now moves to dismiss that latter claim. While ACLJ has shown that State is indeed slow, Plaintiff has not plausibly alleged that the government subscribes to some policy or practice of slow-walking its requests for information. For this reason, the Court will grant Defendant's partial Motion to Dismiss, narrowing this case into a basic FOIA challenge related to one particular request.

1

## I. Background

ACLJ is a non-profit organization "dedicated to the defense of constitutional liberties secured by law." ECF No. 1 (Complaint), ¶ 5. Its activities involve "monitor[ing] government activity with respect to governmental accountability" and "promot[ing] integrity, transparency, and accountability in government and fidelity to the rule of law." Id. In line with its organizational mission, Plaintiff regularly makes records requests to federal, state, and local governments and then publishes its findings. Id.

This case stems from one such request. In recounting the procedural history, the Court, for the purposes of this Motion, accepts as true ALCJ's factual retelling of all that has transpired so far.

Plaintiff sent State the instant request on July 25, 2016. See Compl., Exh. A (Request). In its fifteen-page letter, ACLJ sought "any and all records pertaining in any way to the grant funds awarded by the U.S. Department of State (DOS) to OneVoice Israel and OneVoice Palestine, where said organizations campaigned to 'take [Netanyahu] down.'" Id. at 1 (quoting Staff of S. Subcomm. on Investigations, 114th Cong., Review of U.S. State Department Grants to OneVoice 19 (2016)). Following a treatment of State's dealings with OneVoice, id. at 1-7, Plaintiff set forth twelve categories of records aimed at unearthing this connection. Id. at 7-13.

After the letter arrived on July 26, the Department wrote back in two days' time, acknowledging receipt of ACLJ's FOIA request, assigning a case number, and advising that the agency would begin processing. See Compl., Exh. B (July 28, 2017, Acknowledgment Letter from State Department to ACLJ) at 1. Defendant qualified that "[u]nusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to

process your request." Id. The letter ended by stating that the agency intended to "notify [ACLJ] as soon as responsive material has been retrieved and reviewed" and by providing the agency's contact information. Id.

FOIA sets the relevant time limits for such processing. It requires as a baseline that federal agencies "determine within 20 days . . . after the receipt of any . . . request whether to comply" and "immediately notify the person making such request of . . . such determination and the reasons thereof." 5 U.S.C. § 552(a)(6)(A)(i). Although in "unusual circumstances" the government may write to let the requesting party know that it needs ten extra working days, id. § 552(a)(6)(B), whenever an agency does not abide by whichever applicable deadline, the records-seeker can sue in federal court without waiting for an answer. Id. § 552(a)(4)(B), (a)(6)(C)(i).

On December 26, 2016, ALCJ filed this suit after having not received a response to its FOIA request since the end of July. See Compl., ¶ 28. Its Complaint alleged a pair of counts, the first challenging State's "improper withholding of [the] requested records" and the second attacking its "impermissible practice, policy, and pattern of untimely and noncompliant FOIA responses." Id., ¶¶ 36, 49.

This Motion to Dismiss concerns only that second claim. Plaintiff pleads that the State Department "has a reputation for flaunting [*sic*] and disregarding its public accountability and FOIA obligations." Id., ¶ 40. As support, ACLJ cites how State has been similarly dilatory in producing records and is being non-responsive with its acknowledgment letters for three others of its FOIA requests — including one in which the Department granted expedited processing. Id., ¶¶ 40, 43, 46 (citing ACLJ v. Dep't of State, No. 16-1355 (D.D.C.); ACLJ v. Dep't of State, No. 16-1751 (D.D.C.); ACLJ v. Dep't of State, No. 16-1975 (D.D.C.)). According to a recent

Department of Justice report, it took Defendant 111 days to respond on average in 2014, and only 10 percent of its FOIA officers have gone through requisite training, both marks being the worst of any major federal agency. Id., ¶ 41 (referencing Dep't of Justice, 2016 Chief FOIA Officer Reports — Assessment of Federal Departments and Agencies 73, 109 (2016)). This reputation for delinquency is apparently well known. Id., ¶ 42 (citing news stories).

As ACLJ sums it up, "This is the fourth FOIA lawsuit against this Defendant in the past approximately six months, and the fourth case where Defendant failed to comply with the threshold requirement of the FOIA in its 'response' to Plaintiff's FOIA requests." Id., ¶ 47. The organization thus complains that, as in a past case, "Defendant did not take Plaintiff's FOIA request seriously until Plaintiff filed its lawsuit." Id., ¶ 46. These facts together purportedly show that State "is engaging in an established impermissible practice, policy, and pattern of not responding as required by the clear requirements of 5 U.S.C. § 552(a)(6)(A)." Id., ¶ 48. To put a stop to the agency's repeated tardiness, ACLJ asks for broad declaratory and injunctive relief to "force Defendant to cease" its delay. Id., ¶¶ 49, 52(e), 52(f).

Defendant's Motion to Dismiss this policy-or-practice count is now ripe.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss any count of a complaint that fails "to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the Court "must treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the

4

facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Rule 12(b)(6)'s pleading standard is "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), as a count will survive so long as there is a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Dura Pharm., 544 U.S. at 347). While "detailed factual allegations" are not necessary to withstand a dismissal motion, id. at 555, a complaint still "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). In other words, a plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint may survive even if "'recovery is very remote and unlikely'" or the veracity of the claims are "doubtful in fact" if the factual matter alleged in the complaint is "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.   Analysis**

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). By the terms of the Act, if a person makes an information request that "reasonably describes [the] records" she seeks and follows "published rules," the agency "shall make the records promptly available." 5 U.S.C. § 552(a)(3)(A); see DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754-55 (1989). If the government instead improperly withholds records, federal courts may compel their production. See 5 U.S.C. § 552(a)(4)(B).

5

Yet ACLJ wants more than documents. It also contends that State's procrastination in complying with FOIA's statutory deadlines has morphed into a custom of flouting the Act. Plaintiff thus asks the Court to "force Defendant to cease its impermissible practice of untimely and noncompliant responses to FOIA requests." Compl., ¶ 52(e). In a nutshell, ACLJ posits that transparency repeatedly delayed has become a practice of transparency denied.

In theory, that might be so. But the pleadings here do not give rise to a reasonable inference that the State Department subscribes to any policy or practice of dragging its feet on FOIA requests. The Court first addresses the scope of a policy-or-practice claim and then discusses the shortfalls of ACLJ's Complaint, even when construed generously.

A. Policy-or-Practice Claim

"We start with the proposition that FOIA section 552(a)(4)(B) vests courts with broad equitable authority." Citizens for Responsibility & Ethics in Wash. v. DOJ, 846 F.3d 1235, 1241 (D.C. Cir. 2017). That section expressly gives federal courts "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). While its text pertains solely to withholdings, the Supreme Court has clarified that it in no way "limit[s] the inherent powers of an equity court." Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 20 (1974). Courts draw on this "equitable power" to "enforc[e] [FOIA's] terms." Payne Enters., Inc. v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988).

An individual may thus bring, in conjunction with her specific information request, "a claim that an agency policy or practice will impair the party's lawful access to information in the future." Newport Aeronautical Sales v. Dep't of Air Force, 684 F.3d 160, 164 (D.C. Cir. 2012) (quoting Payne, 837 F.2d at 491); see City of Houston v. HUD, 24 F.3d 1421, 1428 (D.C. Cir.

1994) (permitting challenge to "both a specific agency action and the policy that underlies that action"). That FOIA policy or practice may be "informal, rather than articulated in regulations or an official statement of policy." Payne, 837 F.2d at 491. Relief for such claims, however, is limited to "'relieving the injury suffered by the complainant,'" as opposed to "remedy[ing] any injury suffered by 'the general public.'" CREW, 846 F.3d at 1243 (quoting Kennecott Utah Copper Corp. v. Dep't of Interior, 88 F.3d 1191, 1203 (D.C. Cir. 1996)). In other words, the Court could prevent State from engaging in a policy or practice only insofar as it slows down ACLJ's FOIA requests.

Claims targeting agencies' internal FOIA workings usually also involve instances where conduct is "sufficiently outrageous." Payne, 837 F.2d at 494. Particularly illustrative is the D.C. Circuit's opinion in Payne. That case addressed the Air Force's repeated refusal to disclose the same category of documents to a company, Payne Enterprises, over the course of nearly two years. Id. at 488, 494. Agency officials ostensibly relied on a policy letter and FOIA Exemptions 4 and 5, but following multiple administrative appeals, the Secretary of the Air Force would "invariably" side with Payne. Id. at 487, 489-90. Even after a letter from the Secretary about revising FOIA practices, individual officers continued to reject Payne's requests, and so the company sued. Id. at 490. The Circuit held that "officers' noncompliance" and "the Air Force's persistent refusal to end [that] practice" meant Payne was clearly entitled to declaratory relief that the Air Force was in violation of FOIA. Id. at 494. As to a prospective injunction, it instructed the district court to "evaluate the likelihood that the [agency] will return to its illicit practice of delay in the absence of an injunction." Id. at 495.

District courts have since refined the Payne doctrine. To state a policy-or-practice claim, a plaintiff must plausibly allege "that the agency has adopted, endorsed, or implemented some

7

policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" Muttitt v. Dep't of State, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting Payne, 837 F.2d at 491); accord Cause of Action Inst. v. Eggleston, No. 16-871, 2016 WL 7243518, at *4 (D.D.C. Dec. 15, 2016); see also Competitive Enter. Inst. v. EPA, 153 F. Supp. 3d 376, 384 (D.D.C. 2016); Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 140 (D.D.C. 2013); Nat'l Sec. Counselors v. CIA, 898 F. Supp. 2d 233, 252-53 (D.D.C. 2012); Muttitt v. U.S. Cent. Command, 813 F. Supp. 2d 221, 227-28 (D.D.C. 2011); Pub. Emps. for Envt'l Responsibility v. Dep't of Interior, No. 06-182, 2006 WL 3422484, at *9 (D.D.C. Nov. 28, 2006). That is to say, a plaintiff must plead (1) some policy or practice that (2) results in a repeated violation of FOIA.

B. ACLJ's Allegations

Turning to ACLJ's case, the asserted FOIA violation is not difficult to perceive. The State Department has not — with Plaintiff's four requests or, apparently, in a host of other cases — abided by the Act's twenty-day response timeline. See Compl., ¶ 48 (citing 5 U.S.C. § 552(a)(6)(A)); id., ¶ 41 (referencing 111-day average). It is not pellucid, however, what policy or practice ACLJ believes gives rise to this tardiness. So the Court does some sleuthing.

In its Complaint, Plaintiff broadly targets State's "impermissible practice, policy, and pattern of untimely and noncompliant FOIA responses." Compl., ¶ 49. "Untimely" is rather simple, but how have State's responses also been "noncompliant"? ACLJ writes that "the sole letter [Defendant] sent to Plaintiff in response to Plaintiff's FOIA request" "[p]erfectly accentuat[es] Defendant's utter disregard for its FOIA obligations," suggesting some defect in the initial acknowledgment letters. Id., ¶ 43. ACLJ's Opposition argues further that State has a policy or practice "not only to intentionally delay the production of any documents required by FOIA, but actually to refuse to provide any response required by FOIA, unless and until the

8

requestor initiates a lawsuit." Opp. at 4 (emphases modified); see Compl., ¶¶ 40, 43, 46-47. In other words, Plaintiff additionally suggests a practice of waiting for a lawsuit before taking action. Even though ACLJ also mentions in passing that "only 10 percent of Defendant's FOIA officers took required training," the organization neither states that undertraining is the policy or practice nor links this lack of expertise to delay. See Compl., ¶ 21. The Court thus does not address the lack of training as a separate point.

The Complaint, in sum, is a stone somewhat roughly cut. Examining it from every angle reveals only three colorable policy-or-practice facets: condoning rampant delay, sending non-compliant letters, and forcing requestors to sue. The Court appraises each of them.

1. *Delay Itself*

ACLJ first focuses on State's pervasive delay. Its Complaint objects to the agency's "flaunting [*sic*] and disregarding" of deadlines and "not responding as required by the clear requirements of 5 U.S.C. § 552(a)(6)(A)." Compl., ¶¶ 40, 48; see Opp. at 4 (asserting State has "failed to issue a determination in a timely manner under FOIA"). While its Opposition now rebuffs any attempt to reduce its pleadings to "allegations of the agency's mere failure to meet FOIA's 20-day timeline," it nevertheless continues to contend that delay alone would suffice for a policy-or-practice claim. See Opp. at 5 & n.2 (emphasis added) ("[A]n agency's failure to comply with the 20-day deadline set forth in FOIA, without more, constitutes an improper withholding and in some cases, is sufficient to support a Payne action.").

The Court cannot concur. A reexamination of Payne reveals why this is so. That case first "recognized that there 'may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention.'" Payne, 837 F.2d at 491 (quoting Lybarger v. Cardwell, 577 F.2d

9

764, 767 (1st Cir. 1978)). Payne then expanded on what those "circumstances" might look like. A persistent "refusal to supply information" would first need to "evidence[] a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA." Id. (emphasis added).

In other words, while tardiness would violate FOIA, it only becomes actionable when "some policy or practice" also undergirds it. Muttitt, 926 F. Supp. 2d at 293. This aligns with the rule that the sole "penalty" for mere procrastination is that "the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." Citizens for Responsibility & Ethics in Wash. v. FEC, 711 F.3d 180, 189 (D.C. Cir. 2013); see Cause of Action, 2016 WL 7243518, at *5. Courts have thus recognized a plaintiff "cannot rest on the mere fact of delay alone to establish a claim." Judicial Watch, Inc. v. DHS, No. 15-1983, 2016 WL 5660233, at *3 (D.D.C. Sept. 29, 2016); see Cause of Action, 2016 WL 7243518, at *5 ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable under Payne."); Competitive Enter., 153 F. Supp. 3d at 384 (identifying no "broader policy or practice of delaying disclosure"); PEER, 2006 WL 3422484, at *9 (requiring "illegal agency policy" of delay). Delay-based claims must instead rely on some identifiable set of agency actions that is "done to delay." Cause of Action, 2016 WL 7243518, at *5 (assessing practice of submitting politically sensitive documents to Office of White House Counsel to delay release).

None of the cases Plaintiff responds with contradicts these principles. See Opp. at 5 n.2. Several recognize, as this Court has, that prolonged delay would be a violation of FOIA. See Info. Network for Responsible Mining v. Bureau of Land Mgmt., 611 F. Supp. 2d 1178, 1183 (D. Colo. 2009); Elec. Privacy Info. Ctr. v. DOJ, 416 F. Supp. 2d 30, 35, 39-40 (D.D.C. 2006); Ore. Nat. Desert Ass'n v. Gutierrez, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006); see also Gilmore

10

v. Dep't of Energy, 33 F. Supp. 2d 1184, 1186-89 (N.D. Cal. 1998) (addressing only subject-matter jurisdiction to address a violation of FOIA deadlines and reserving judgment on "merits of [plaintiff's] claim"). But that is not the issue here. The question is what policy or practice gives rise to that violation. Indeed, one of ACLJ's cases even rejects a claim on the basis that, though there was an "unsettling haphazardness" in an agency's response timelines, the plaintiff had not shown some "agency-wide pattern[] [or] practice[]" — as it could by referencing "FOIA handbooks, guidance documents, [or] policies or procedures," whether formal or informal. Nulankeyutmonen Nkihtaqmikon v. Bureau of Indian Affairs, 672 F. Supp. 2d 154, 171 (D. Me. 2009); see Our Children's Earth Found. v. Nat'l Marine Fisheries Serv., 85 F. Supp. 3d 1074, 1089 (N.D. Cal. 2015) (accepting a "consistent" practice of delay).

The aspects of Plaintiff's Complaint premised on delay alone are thus fatally flawed. In an effort to supply something more, ACLJ adds that there is a policy or practice of "intentional[] delay." Opp. at 4 (emphasis added). That is, "Defendant has determined that it can and will flout the law by delaying Plaintiff's FOIA requests indefinitely." Id. at 9 (emphasis added).

To the extent that ACLJ seeks to invoke some formal or informal agency decision that FOIA's twenty-day limit simply will not apply, its Complaint does not adequately capture that theory. Nowhere does Plaintiff actually articulate some agency-wide "intent[]" to delay, some "determin[ation]" that State would pass over the Act's time limits, or even that Defendant has taken some informal stance that across-the-board delay is the new operating procedure. Id. at 3, 9. The Complaint instead obliquely alleges that State "has a reputation for flaunting [*sic*] and disregarding its public accountability and FOIA obligations." Compl., ¶ 40 (emphasis added). And although Plaintiff also elaborates that Defendant's FOIA officers are serially undertrained, this fact does not make the pleadings clearer. Id., ¶ 41. A theory that officials are well-meaning

11

but inept would be quite unlike a narrative in which State's concerted objective is to be tardy or the agency hamstrings officers' FOIA capabilities. See CREW, 711 F.3d at 189 (noting "practical impossibility for agencies to process all [FOIA] requests completely within twenty days" and "justifiable agency backlogs"); Judicial Watch, 2016 WL 5660233, at *2 (pointing to "inevitable but unintended delay attributable to a lack of resources"); see also Payne, 837 F.2d at 491 (exempting "isolated mistakes by agency officials"); Acknowledgment Letter at 1 (pointing to possible issues with complexity and volume of requests). ACLJ must spell out the actual thrust of its claim with greater specificity.

Also unanswered are basic questions about this supposed policy or practice of FOIA procrastination. Why would State subscribe to such a policy or practice of delinquency? How do agency officials go about ignoring deadlines *en bloc*? Plaintiff offers "no fact or statement to establish why the requests were delayed or how the delays were the result of an either formal or informal [State] policy or practice to violate FOIA's requirements." Judicial Watch, 2016 WL 5660233, at *2. To set forth a plausible case, the organization must at the very least string together a coherent narrative and not merely speculate that the government may have unlawful internal workings.

As ACLJ cannot show that its more sweeping delay theory survives absent more concrete allegations, the Court now addresses in turn two narrower policies or practices involving letters and then lawsuits.

2. *Acknowledgment Letters*

Plaintiff next takes issue with State's sending of "noncompliant FOIA responses." Compl., ¶ 49. Namely, "the sole letter it sent to Plaintiff in response to Plaintiff's FOIA request resulting in the instant Complaint is essentially and substantively identical to the sole response

letter it sent [for] . . . Plaintiff's prior FOIA request[s]," which resulted in three other lawsuits. Id., ¶ 43. The Court interprets this, perhaps too generously, as ACLJ's identifying some policy or practice of sending "non-compliant letter[s]" in an effort to slow-roll FOIA requests. See Opp. at 5; Compl., ¶ 47 ("Defendant failed to comply with the threshold requirements of the FOIA in its 'response' to Plaintiff's FOIA requests.").

Such a position holds no water. FOIA <u>requires</u> that agencies provide tracking numbers for all requests that take over ten days and establish a point of contact if individuals wish to inquire about the request-receipt date or estimated response timeline. See 5 U.S.C. § 552(a)(7). State's acknowledgment letters do what the Act mandates. Each letter informs the requestor of its case number, the agency's date of receipt, and contact information for any inquiries. See Acknowledgment Letter at 1.

ACLJ does not assert that these letters were somehow shams and that State is instead buying time. Nor does it contend that something in these missives gives individuals a false hope that the agency will be timely, leaving them in a lurch while it dilly-dallies. Plaintiff's only objection seems to be that this mere <u>acknowledgment</u> letter is not the punctual <u>substantive</u> response that it seeks. See Opp. at 5 (explaining letter is "a failure to respond appropriately under FOIA"). This is true. See <u>CREW</u>, 711 F.3d at 186. But unless ACLJ can show that sending out receipt letters that <u>comply</u> with FOIA is somehow tantamount to <u>violating</u> the Act — whether it be by causing delay or something else — its attack on this aspect of the agency-disclosure process falls flat.

3. *Lawsuits*

This brings us to Plaintiff's final position. ACLJ contends that State "refuse[s] to provide any response required by FOIA, <u>unless and until the requestor initiates a lawsuit</u>." Opp. at 4.

This would mean that Defendant has a policy or practice of "willfully ignor[ing] all of its obligations under FOIA" absent judicial intervention. Id. at 2. If true, such a course of action would violate not only § 552(a)(6)(A)'s time limits, but also the more basic requirement that agencies turn over documents in the first place. See 5 U.S.C. § 552(a)(3)(A).

Analyzing this supposed policy or practice requires a charitable reading of the Complaint. That pleading does not expressly state that Defendant requires individuals to file lawsuits. Instead, it references one of ACLJ's FOIA requests in which expedited processing was granted and explains that "Defendant did not take [that] FOIA request seriously until Plaintiff filed its lawsuit." Compl., ¶ 46. Some hint of a policy-or-practice assertion might be drawn from the next paragraph, which underscores that "[t]his is Plaintiff's fourth FOIA lawsuit against this Defendant in the past approximately six months, and the fourth case where Defendant failed to comply with the threshold requirements of the FOIA." Id., ¶ 47.

Even if some dash of State's lawsuit-inducing behavior is present, the dish that ACLJ assembles does not pass the taste test. Although individuals may choose to sue following agency inaction, see 5 U.S.C. § 552(a)(6)(C)(i), once again, Plaintiff does not express in its Complaint that State's policy or practice is to force lawsuits. At least that allegation would be necessary for a plausible pleading. Nor does ACLJ supply the why or how that would help tie its allegations about agency wrongdoing together. See Judicial Watch, 2016 WL 5660233, at *2. Present only is the fact that Plaintiff has filed four FOIA cases to retrieve records from State.

This is not enough. While the Court will not set some numerical threshold for the lawsuits needed before inferring a plausible claim that State compels litigation, a party must at least plead more than "isolated mistakes," Payne, 837 F.2d at 491, or "isolated action[s]" by an agency. Swan View Coal. v. Dep't of Agric., 39 F. Supp. 2d 42, 46 (D.D.C. 1999). Yet ACLJ

does not allege that a multitude of others must also sue to obtain a government response. Indeed, courts have tended to accept such claims only when an accumulation of FOIA violations reasonably reveals some set of inopportune agency behaviors. See, e.g., Muttitt, 813 F. Supp. 2d at 230 (accepting "ten requests for estimated completion dates that did not receive an adequate response" as forming viable claim); Nat'l Sec. Counselors, 898 F. Supp. 2d at 248, 282-83 (noting "ten examples . . . [that] serve as a 'representative sample'" of policy). After all, Payne itself involved a situation in which an agency knowingly persisted in violating FOIA for two years. See 837 F.2d at 494.

Plaintiff's sampler of four is unsatisfying. With so few anecdotes at play, other benign and "more likely explanations" readily take the fore. Iqbal, 556 U.S. at 681. The fact that a few requests were on State's backburner until ACLJ filed suit might be "attributable to a lack of resources." Judicial Watch, 2016 WL 5660233, at *2. Or these delays and subsequent suits might stem from the well-documented "sudden rise in both FOIA requests and FOIA litigation involving the Department" during this past election season. Republican Nat'l Comm. v. Dep't of State, No. 16-486 (D.D.C. July 5, 2016), ECF No. 14.

It is worthwhile to note, too, that none of ACLJ's FOIA requests is especially narrow, seeking at times dozens of sets of records, sometimes about far-reaching topics. See No. 16-1355, ECF No. 1-1 (requesting 31 categories regarding editing of press-briefing video); No. 16-1751, ECF No. 1-1 (requesting 22 categories regarding Islamic State's attacks on Christians); No. 16-1975, ECF No. 1-1 (requesting 6 categories regarding Bureau of Near Eastern Affairs and Clinton Foundation donor). The instant fifteen-page letter is no exception: It asks for, *inter alia*, all communications between over sixty individuals regarding OneVoice and all records

15

pertaining to Netanyahu's 2015 election.  See Request, ¶¶ 2, 8.  The mere fact that ACLJ filed its lawsuits before a State response hardly seems extraordinary.

Before concluding, the Court scratches at one last logical itch.  The Complaint does not assert that Defendant necessarily induced ACLJ or others to file FOIA lawsuits.  It is, of course, descriptively true that individuals can (and do) exercise their right to bring a civil action.  But Plaintiff does not plead, for instance, that State actually refused to process requests or to provide a reasonable completion date when asked, such that suing becomes more expedient than waiting, see 5 U.S.C. § 552(a)(7)(B), or that the agency tells individuals they would be better off litigating.  A plausible complaint would need to articulate, beyond the fact that requestors chose to sue when faced with (admittedly) frustrating delays, that the State Department itself has a policy or practice of forcing lawsuits.

In sum, this Complaint does not sufficiently identify a policy or practice of compelling lawsuits.

* * *

The Court last offers a few endnotes.  Even if ACLJ were to succeed on this specific cause of action, that would not necessarily earn the organization the broad declaratory and injunctive relief that it seeks.  This Court might declare some State policy or practice unlawful, but "only a rare instance of agency delinquency" would warrant an injunction.  CREW, 846 F.3d at 1246; see Payne, 837 F.2d at 494-95 (finding declaratory relief warranted but remanding on propriety of prospective injunction).  And assuming injunctive relief were available, its scope would also be narrow.  The D.C. Circuit has recently held that, in a FOIA case, the Court likely has no power to enjoin the government from engaging in a policy or practice of delayed disclosure writ large, but can only order the agency to cease any actions *vis-à-vis* the plaintiffs in

the lawsuit.  See CREW, 846 F.3d at 1243-44 (holding courts have "no authority" to enforce FOIA provisions as to "the public").

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss Count II of the Complaint without prejudice.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 17, 2017