UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>    Defendant. | Civil Action No. 16-2516 (JEB) |

## MEMORANDUM OPINION

Not all authors are Jack Kerouac, penning the bulk of his novel *On the Road* in (self-reportedly) three weeks, or Franz Kafka, completing his short story *The Judgment* in a single midnight session. For most, including Plaintiff American Center for Law and Justice, successful writing takes time and at least a redraft or two. In its first go-round, ACLJ alleged as a second count that Defendant Department of State subscribes to a policy or practice of delay in responding to Freedom of Information Act requests. Because this narrative lacked specificity, the Court dismissed that claim without prejudice. Plaintiff now seeks to file a much revised Amended Complaint that refines its theory, while State retorts that the organization should not be permitted another chance to tell a policy-or-practice tale. The Court finds, this time, that ACLJ has raised more than vague assertions about how Defendant has been slow with its FOIA processing and thus will permit the Amended Complaint to go forward.

I.    **Background**

The Court assumes the reader's familiarity with its prior Opinion, which sets forth the lay of the land. See Am. Ctr. for Law & Justice v. Dep't of State, No. 16-2516, 2017 WL 1377909

1

(D.D.C. Apr. 17, 2017). In brief, ACLJ, a non-profit organization focused on governmental accountability, requested certain documents relating to State's funding of a political organization that opposed Israeli Prime Minister Benjamin Netanyahu. Id. at *1. After not hearing for five months whether the Department would hand over any material, Plaintiff filed the present lawsuit. Id. ACLJ alleged both that it was entitled to these specific documents and that State subscribed to a policy or practice of flouting FOIA's usual twenty-day disclosure deadline. Id. at *1-2.

Following a motion by Defendant, the Court dismissed without prejudice the latter claim targeting the Department's FOIA-processing timelines. The Opinion explained that, to make out such a cause of action, "a plaintiff must plead (1) some policy or practice that (2) results in a repeated violation of FOIA." Id. at *4. While the original Complaint identified the recurring FOIA violation primarily as undue delay, it failed to specify "what policy or practice ACLJ believes gives rise to this tardiness." Id. The Court was able to pencil in three makeshift recipes for ACLJ. The Opinion rejected the first two — involving delay itself and State's request-receipt acknowledgment letters — after reasoning that plaintiff "'cannot rest on the mere fact of delay alone'" and that these letters in fact "comply with FOIA." Id. at *5-7 (quoting Judicial Watch, Inc. v. DHS, 211 F. Supp. 3d 143, 147 (D.D.C. 2016)). The third path involved the agency's requiring requestors to sue, but that theory was also a few ingredients short of a well-pled dish, as Plaintiff had not even "express[ed] in its Complaint that State's policy or practice is to force lawsuits." Id. at *7. ACLJ's policy-or-practice count was thus wanting, and the Court dismissed it without prejudice in the event the organization chose to try again.

ACLJ presently does so, and its Motion to file an Amended Complaint is now ripe.

2

## II. Legal Standard

A plaintiff may amend its complaint once as a matter of course within 21 days of serving it or within 21 days of the filing of a responsive pleading. See Fed. R. Civ. P. 15(a)(1). Otherwise, it must seek consent from the defendant or leave from the Court. The latter permission "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave to file an amended complaint, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). "The defendant bears the burden of demonstrating that a plaintiff's motion to file an amended complaint should be denied." Clayton v. District of Columbia, 999 F. Supp. 2d 178, 183 (D.D.C. 2013).

It is clear, however, that amendment should not be permitted if it would be futile. Foman, 371 U.S. at 182 (noting "futility of amendment" is permissible reason to deny Rule 15(a) motion). In other words, if the new causes of action would still be deficient notwithstanding the proposed amendment, courts need not grant leave. In re Interbank Funding Corp. Securities Litigation, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

**III.    Analysis**

Despite Plaintiff's efforts to shore up its pleadings via allegations in the Amended Complaint, Defendant contends that these patchwork barricades are not enough to survive another motion-to-dismiss volley. The Court focuses on the content of ACLJ's renewed policy-or-practice count before discussing the Government's objections to it.

    A.  ACLJ's Allegations

As this Court stated previously, to make out a claim, ACLJ must plead "(1) some policy or practice that (2) results in a repeated violation of FOIA." ACLJ, 2017 WL 1377909, at *4. Put another way, Plaintiff needs to plausibly allege "that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" Muttitt v. Dep't of State, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988)). That FOIA policy or practice may be "informal, rather than articulated in regulations or an official statement of policy." Payne, 837 F.2d at 491. The Court also instructed last time, in analyzing three possible interpretations of the original Complaint, that a policy-or-practice claim premised on the fact of "delay alone" would be "fatally flawed." ACLJ, 2017 WL 1377909, at *6; see Cause of Action Inst. v. Eggleston, No. 16-871, 2016 WL 7243518, at *5 (D.D.C. Dec. 15, 2016) ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable . . . .").

Wisely, then, ACLJ does not hang its hat on delayed disclosure to satisfy both pleading prongs. It instead specifically targets the third possible theory that the Court previously identified — *viz.*, that the policy or practice is State's forcing requestors to sue to obtain a FOIA response. The prior Opinion observed that, if true, "such a course of action would violate not only [the Act's] time limits, but also the more basic requirement that agencies turn over

4

documents in the first place." ACLJ, 2017 WL 1377909, at *7 (citing 5 U.S.C. § 552(a)(3)(A)'s disclosure requirement that an agency "shall make the records promptly available to any person"); see Cause of Action Inst., 2016 WL 7243518, at *5 (comparing allegations of mere delay with theory that agency "decided, even initially, to not produce any records that should be produced"). Put differently, an agency would obviously be violating FOIA writ large if it decided never to respond to FOIA requests.

Along these lines, the proposed Amended Complaint explains that the Department has adopted an "impermissible practice, policy, and pattern of refusing to issue a determination and/or produce responsive documents unless and until Plaintiff files suit." ECF No. 22-1 (Proposed Amended Complaint), ¶ 91. In other words, Defendant's policy or practice is to "intentionally refus[e] to issue a determination, produce documents and/or respond in any manner" absent pending litigation. Id., ¶ 81 (emphasis added); see Reply at 8-9 (alleging "pattern or practice — whether formal or informal — of failing to respond to Plaintiff's FOIA requests unless and until Plaintiff files suit"). According to ACLJ, this case thus should not be construed as attacking State's "failure to comply with FOIA's 20-day deadline," but rather its "failure to comply with FOIA period." Reply at 2.

In support of this position, Plaintiff first discusses how it sent six FOIA requests to State in the past year alone. See Am. Compl., ¶¶ 7-44. Although each lingered for months without a response, for the four in which ACLJ sued, the Department admitted that it had responsive documents and promptly began turning them over. Id., ¶¶ 26-31. In other words, the Department "can respond to Plaintiff's FOIA request[s], but . . . it will do so only after a lawsuit is filed." Id., ¶ 85 (emphasis added). ACLJ has thus learned from experience that the only way to jump-start State's FOIA machinery is to file a case in federal court. Id., ¶¶ 85-86.

5

State allegedly implemented this policy or practice in part by deconstructing its own apparatus for responding to routine FOIA requests. ACLJ draws on a 2016 State Department Office of the Inspector General report to tell some of the story. That report recapped the Office's recommendations from 2012 and Defendant's lack of progress since then. Id., ¶¶ 48-58. Throughout the years, the Department has apparently ignored directives to, *inter alia*, increase staffing (and, in fact, decreased it), provide necessary FOIA training and guidance, ensure proper oversight mechanisms, and develop internal rules or criteria for conducting searches. Id.

ACLJ alleges that this disarray actually <u>advantages</u> the Department: either requestors get nothing or they litigate. See Reply at 3-4. Even in the latter scenario, where "a FOIA requestor files suit, Defendant suffers no adverse consequences, other than a court ordering them to produce the FOIA records that should have been produced at the pre-litigation stage." Id. at 4; see Am. Compl., ¶ 89. In other words, ACLJ believes that State requires lawsuits because it saves the agency the hassle of actively maintaining a FOIA-disclosure regime.

B. <u>Government's Objections</u>

While the Government raises three reasons for why this renewed count is nonetheless futile, the Court can dispatch with the first two together. First, ACLJ again references in the Amended Complaint the agency's acknowledgment-of-receipt letters, and State argues that these allegations are still insufficient to state a claim, given that those missives actually comply with FOIA. See Opp. at 3-4; Am. Compl., ¶ 88; see also 5 U.S.C. § 552(a)(7) (requiring agency to acknowledge receipt of each request). Second, Defendant contends that the OIG report's admonitions cannot "stat[e] the existence of any policy or practice to violate FOIA" because the Court has already "reject[ed] the adequacy of the original Complaint's allegations regarding State's purported failure to adequately train its employees." Opp. at 4. Neither arrow flies.

What is significant is that these allegations do not underpin Plaintiff's theory. As discussed, ACLJ cites instead State's "impermissible practice, policy, and pattern of refusing to issue a determination and/or produce responsive documents <u>unless and until Plaintiff files suit</u>." Am. Compl., ¶ 91 (emphasis added). That policy or practice, if proven, would violate the basic tenets of FOIA, including its requirement that agencies disclose information in the first place. <u>ACLJ</u>, 2017 WL 1377909, at *7 (citing 5 U.S.C. § 552(a)(3)(A)).

In relation to <u>this</u> claim, the letters and lack of training are mere accoutrements that show <u>how</u> that policy or practice works. In other words, the central theory is that, to skirt its FOIA duties wholesale, State forces requestors to file suit to obtain timely information. See Reply at 3-4. According to ACLJ, though, the Department <u>implements</u> this policy or practice by letting its mainline FOIA operations wither through its understaffing, undertraining, and failing to supervise or instruct employees. See Am. Compl., ¶¶ 48-58. There's a small catch. Because such internal neglect would backfire quickly if each requestor then sued at the twenty-day mark, to dissuade dogged litigators, State sends out receipt letters that ensure some modicum of FOIA compliance. <u>Id.</u>, ¶¶ 46, 89; Reply at 4. While these individual puzzle pieces may ultimately buoy ACLJ's case, the Government misses the bigger picture in objecting to them as the subject of the lawsuit. As the complained-of policy or practice is that State forces lawsuits, that allegation is the proper target.

Third and finally, the Department fires in the right direction and argues that no lawsuit-inducing theory can survive. The Court had previously agreed that the prior allegations were deficient and blocked off that route for several reasons. Last time, ACLJ had not "expressly state[d]" the theory in the original Complaint, "ple[d] more than 'isolated mistakes,'" rebutted the benign explanation that FOIA litigation had risen in the past year, or alleged more than that

7

"requestors chose to sue when faced with (admittedly) frustrating delays." ACLJ, 2017 WL 1377909, at *7-8 (emphasis omitted) (quoting Payne, 837 F.2d at 491). With the road in such disrepair, the Court could not allow the count to proceed.

The Amended Complaint now patches these potholes. It explicitly articulates that the policy or practice is State's refusal to respond unless and until suit is brought. See Am. Compl., ¶¶ 81, 89. The pleading then clarifies that this behavior cannot be chalked up to isolated incidents or last year's enlarged FOIA docket. The agency has instead proceeded on the same path with eyes wide open since 2012, as evidenced in part by its ignoring of OIG's directives that would rebuild its sunshine operations. Id., ¶¶ 48-58. From this continuity in State's practices, the Court may find, at this early stage, that something more than mere agency "mistakes" are afoot. See Payne, 837 F.2d at 491. Last, ACLJ explains that it is not somehow choosing to sue; rather, the Department has put requestors in a bind. Plaintiff has surmised through its iterative experience with the Department — where the agency provides "relatively expedient productions of documents once Plaintiff files suit," Am. Compl., ¶ 85 — that "suing [has] become more expedient than waiting." ACLJ, 2017 WL 1377909, at *8. The organization, in fact, has waited for periods "rang[ing] from one month to five months," which pattern "demonstrates that no time would be sufficient for Defendant to comply with FOIA, and that, unless and until Plaintiff files suit, Defendant will not respond appropriately to Plaintiff's FOIA requests." Am. Compl., ¶ 86; see id., ¶¶ 26-44 (describing experiences in other cases). If true, these allegations at least encapsulate an informal *modus operandi* for the Department's dealings with its requestors — in effect, a wink-wink that it takes a lawsuit for the Government to get going on its FOIA duties.

In sum, ACLJ no longer gestures at some nebulous policy or practice. Given that the Amended Complaint articulates the objected-to agency behavior (forcing requestors to sue) with

sufficient detail to tie its story together, State's three swipes at the Amended Complaint are not presently enough to bat the pleading away. In permitting it to proceed, however, the Court acknowledges the relatively lenient standard complaints must meet to survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (noting that, even if "'recovery is very remote and unlikely'" or if veracity of claims are "doubtful in fact," a complaint need only include enough facts "to raise a right to relief above the speculative level") (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Even if Plaintiff were to ultimately prove its case, moreover, the remedial question would still remain open, as "'only a rare instance of agency delinquency' would warrant an injunction." ACLJ, 2017 WL 1377909, at *8 (quoting Citizens for Responsibility & Ethics in Wash. v. DOJ, 846 F.3d 1235, 1246 (D.C. Cir. 2017)).

## IV. Conclusion

For these reasons, the Court will grant Plaintiff's Motion for Leave to File an Amended Complaint and permit such pleading to be filed. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 8, 2017