

**ACLJ**
**American Center** *for* **Law & Justice**

*Jay Alan Sekulow, J.D., Ph.D.*
*Chief Counsel*

July 25, 2016

Office of Information Programs and Services (IPS)
A/GIS/IPS/RL
U.S. Department of State, State Annex 2 (SA-2)
515 22nd Street, NW
Washington, DC 20522-8100
Telephone: (202) 261-8484
Facsimile: (202) 261-8579

RE: **FOIA Request to U.S. State Department and Relevant Components for Records Regarding Grant Funds Awarded to OneVoice Israel and OneVoice Palestine**

Dear Sir or Ma'am:

This letter is a request ("Request") in accordance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the corresponding department/agency implementing regulations.

The Request is made by the American Center for Law and Justice (ACLJ)[1] on behalf of itself and over 154,000 of its members. The ACLJ respectfully seeks expedited processing and a waiver of fees related to this Request as set forth in an accompanying memorandum.

To summarize, the numbered requests contained herein seek any and all records pertaining in any way to the grant funds awarded by the U.S. Department of State (DOS) to OneVoice Israel and OneVoice Palestine, where said organizations campaigned to "take [Netanyahu] down"[2] in the 2015 Israeli elections, seeking the election of "anybody but Bibi."[3] This request seeks all records indicating what DOS officials knew about the plans, strategy and activities of OneVoice when the decisions to award the grant funds were made, who was involved in the decisions, and how DOS officials responded once the connection between the grant funds and the activities of OneVoice were publicized.

---

[1] The ACLJ is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. The ACLJ regularly monitors governmental activity with respect to international affairs, and works to inform the public of such affairs. The ACLJ and its global affiliated organizations are committed to ensuring the ongoing viability of freedom and liberty in the United States and around the world.

[2] *Joint Staff Report – Review of U.S. State Dep't Grants to OneVoice*, Hearing before the Permanent Subcomm. on Investigations, Comm. on Homeland Sec. and Governmental Affairs, 114th Cong. (2016) [hereinafter *Joint Staff Report*], *available at* http://www.hsgac.senate.gov/subcommittees/investigations/hearings/joint-staff-report_-review-of-us-state-department-grants-to-onevoice.

[3] *Id.*

*201 Maryland Avenue, N.E.*
*Washington, DC 20002*
*202-546-8890*

**COMPLAINT, EXHIBIT A**

## Background

Pursuant to State Department FOIA regulation 22 C.F.R. § 171.4(b), this Background addresses "the subject, timeframe, names of any individuals involved, a contract number (if applicable), and reasons why the requester believes the Department may have records on the subject of the request." 22 C.F.R. § 171.4(b).

A.  **DOS Grants to OneVoice "Repurposed" to Support an Anti-Netanyahu Political Campaign Called V15**

According to current media reports, "[t]he U.S. State Department sent nearly $350,000 to an advocacy group that worked to oust Israeli Prime Minister Benjamin Netanyahu."[4] The reports echoed the findings of the U.S. Senate Homeland Security and Governmental Affairs Committee, Permanent Subcommittee on Investigations, in its Joint Staff Report – Review of U.S. State Department Grants to OneVoice ("Joint Staff Report"), issued on July 12, 2016.[5]

According to the Joint Staff Report:

> On December 2, 2014, at the urging of Prime Minister Benjamin Netanyahu, the Israeli Knesset voted to schedule new national parliamentary elections for March 2015. Within weeks, an international organization known as the OneVoice Movement absorbed and funded an Israeli group named Victory15 or "V15" and launched a multimillion-dollar grassroots campaign in Israel. The campaign's goal was to elect "anybody but Bibi [Netanyahu]" by mobilizing center-left voters.[6]

And, "[t]he Israeli and Palestinian arms of OneVoice, OneVoice Israel (OVI), and OneVoice Palestine (OVP), received more than $300,000 in grants from the U.S. State Department to support peace negotiations between Israel and Palestine over a 14-month grant period ending in November 2014."[7] OVI and OVP "are controlled by a U.S. nonprofit organization called The PeaceWorks Network Foundation."[8]

The Joint Staff Report concluded that:

> OneVoice Israel fully complied with the terms of its State Department grants. OneVoice designed and executed a grassroots and media campaign to promote public support for Israeli-Palestinian peace negotiations for the Department, as it said it would. Under the grant, OneVoice expanded its social media presence,

---

[4] *State Department Sent Taxpayer Money to Group that Attempted to Oust Israel's Netanyahu*, FOXNEWS.COM (July 13, 2016), http://www.foxnews.com/politics/2016/07/13/state-department-sent-taxpayer-money-to-group-that-attempted-to-oust-israels-netanyahu.html.
[5] *Joint Staff* Report, *supra* note 2.
[6] *Id.* at 1.
[7] *Id.*
[8] *Id.* at 6.

2

COMPLAINT, EXHIBIT A

built a larger voter database, and hired an American political consulting firm to train its activists and executives in grassroots organizing methods in support of the Israeli-Palestinian peace process.

The Subcommittee found no evidence that OneVoice spent grant funds to influence the 2015 Israeli elections. **Soon after the grant period ended, however, OneVoice used the campaign infrastructure and resources built, in part, with State Department grants funds to support V15.** In service of V15, OneVoice deployed its social media platform, which more than doubled during the State Department grant period; used its database of voter contact information, including email addresses, which OVI expanded during the grant period; and enlisted its network of trained activists, many of whom were recruited or trained under the grant, to support and recruit for V15.[9]

Importantly, "[t]his pivot to electoral politics was consistent with a strategic plan developed by OneVoice leadership and emailed to State Department officials during the grant period. The State Department diplomat who received the plan told the Subcommittee that he never reviewed it."[10]

And:

OneVoice's use of government-funded resources for political purposes was not prohibited by the grant agreement because the State Department placed no limitations on the post-grant use of those resources. Despite OneVoice's previous political activism in the 2013 Israeli election, the Department failed to take any steps to guard against the risk that OneVoice could engage in political activities using State-funded grassroots campaign infrastructure after the grant period.[11]

Indeed, as the Joint Staff Report found, "OneVoice's principal mode of operation has been fostering 'grassroots activism'—recruiting and training of activists, hosting public events, and lobbying public officials—in Israel and the Palestinian Territories."[12]

"It is clear that OneVoice successfully built its contact database during the grant period," and Executive Director "Mr. [Josh] Nerpel stated that it was OVI's plan that the data collected during the grant was 'subsequently going to be used for the overall objectives of OneVoice after the grant period ended.'"[13]

Critically, "[t]he Subcommittee's investigation revealed that, during the grant period, OneVoice developed a political strategy designed to defeat the incumbent Israeli government. That strategy relied on grassroots voter outreach and mobilization using campaign infrastructure built, in part,

---

[9] *Id.* at 1.
[10] *Id.* at 2.
[11] *Id.*
[12] *Id.* at 6.
[13] *Id.* at 11-12.

3

**COMPLAINT, EXHIBIT A**

with State Department funds."[14] And, resources developed during the grant period "would be deployed to disrupt the Netanyahu-led coalition by pushing for the 'defection' of 'center/center-left political parties.' The 'Definition of Success' would be 'forcing the [Netanyahu-led] coalition to collapse' and 'preventing a right wing coalition from winning the next election prompted by the coalition collapse.'"[15] "These capacities were built using State Department funds — with no restrictions on how OVI's grant-funded resources could be used after the grant."[16] "OneVoice's agreement with the Department did not prohibit it from using tools intended for public diplomacy as political tools after the grant."[17]

> [T]he State Department made its final payment of grant funds to OVI on August 25, 2014, and the grant period ended on November 30, 2014. In December 2014, the OneVoice Movement began managing a grassroots campaign targeting Prime Minister Netanyahu—consistent with the strategic plan prepared and approved by OVI leadership during the State Department grant period. The campaign described in this section, known as V15, was designed to weaken the Likud-centered governing coalition and (in the words of OVI's Executive Director) "to take [Netanyahu] down" in the 2015 elections.[18]

The Israeli newspaper Haaretz reported that V15 had a clear political aim: 'V15 is trying to replace Israel's government.'"[19]

The Joint Staff Report made four specific findings of how OneVoice used DOS grant funds to implement its V15 campaign:

- "*First*, OneVoice's existing "alumni network" provided activists ready to support and recruit for V15."

- "*Second*, the V15 campaign used OVI's database of voter contact information, including email addresses, which OVI expanded during the grant period."

- "*Third*, OVI's social media platform, which more than doubled during the State Department grant period, was also used to advertise V15's activities."

- "*Finally*, throughout the grant period and for two months into the V15 campaign, OneVoice held itself out publicly as a "partner" of the State Department and the U.S. Embassy-Tel Aviv, including on its website and annual reports to donors."[20]

---

[14] *Id.* at 12.
[15] *Id.* at 12-13.
[16] *Id.* at 13.
[17] *Id.* at 14.
[18] *Id.* at 19.
[19] *Id.* at 21 (quoting Roy Arad, *The Obama Campaign Strategist Who Could Break the Israeli Elections Wide Open*, HAARETZ (Jan. 26, 2015, 12:45 AM), http://www.haaretz.com/news/israel-election-2015/.premium-1.639158.
[20] *Id.* at 22-24.

4

**COMPLAINT, EXHIBIT A**

B.     DOS Policy or Regulations Concerning Investments Made With Grant Funding

According to the Joint Staff Report:

> As mentioned previously, none of the OVI activity described above was barred by the grant terms set by the State Department. The grant specifications for OVI and OVP did not impose limitations on activity outside the scope and time period of the grants. . . . Nor was OVI's use of resources created or expanded during the grant period a violation of existing State Department policy or regulations concerning investments made with grant funding.[21]

So, while "OneVoice Israel complied with the terms of its State Department grants and did not directly use grant funds to influence the 2015 Israeli elections," "**within days after the grant period ended, OneVoice deployed the campaign infrastructure and resources created using grant funds to support an anti-Netanyahu political campaign called V15.**"[22]

The Joint Staff Report concluded: "The experience under the OneVoice grants, however, reveals the ease with which recipient organizations can repurpose certain public-diplomacy resources for political activities."[23]

C.     Irregularities in DOS Consideration of Political Activity of Grant Recipients

The Joint Staff Report findings highlight a significant irregularity in the DOS grants to OneVoice:

> OneVoice's track record of involvement in Israeli elections did not deter the State Department from making the grants. In a staff briefing, a senior official in the Bureau of Near Eastern Affairs, stated that "it would not be right" for the past political experience of a possible grantee to be taken into consideration.[24]

But, "[n]otwithstanding the comments made by a senior official in the NEA Bureau, in an interview with Subcommittee staff, Ms. van-Rijn indicated that past political experience and political activity is, in fact, taken into consideration when vetting possible grantees."[25] And then:

> At the same time, however, the senior official stated that influencing foreign elections is a "red line" that State grantees cannot cross. **The senior official stated that grantees are aware of this "red line" because it would be included in the grant contract or cooperative agreement. But no such provision was included in the OVI or OVP agreements with the State Department,** and neither agreement contemplated electoral activism by OVI or OVP.[26]

---

[21] *Id.* at 24.
[22] *Id.* at 6.
[23] *Id.* at 26.
[24] *Id.* at 14-15.
[25] *Id.* at 15.
[26] *Id.*

5

**COMPLAINT, EXHIBIT A**

The Joint Staff Report findings highlight *another* irregularity in the DOS grants to OneVoice: The Joint Staff Report also indicated that "[t]he average overseas award for State Department grantees is roughly $15,000."[27] During 2013, when the OneVoice grant period began, "the average award was $75,000."[28] Yet, grants to OneVoice totaled $349,276.[29]

### D. U.S. State Department Consul General Deleted Emails With OneVoice

"On May 22, 2015, the Subcommittee issued requests to the State Department seeking information on State employees involved in the award and oversight of grants to OneVoice entities and any files or communications relating to those grants."[30] But "[t]he State Department was unable to produce all documents responsive to the Subcommittee's requests due to its failure to retain complete email records of Michael Ratney, who served as U.S. Consul General in Jerusalem during the award and oversight of the OneVoice grants."

As the Joint Staff Report explained:

> The Subcommittee discovered this retention problem because one important email exchange between OneVoice and Mr. Ratney—described in Part III.C—was produced to the Subcommittee only by OneVoice. After conducting additional searches, the Department informed the Subcommittee that it was unable to locate any responsive emails from Mr. Ratney's inbox or sent mail. Mr. Ratney later elaborated, "[A]t times I deleted emails with attachments I didn't need in order to maintain my inbox under the storage limit." There was an option to archive emails to stay below storage limits, but Mr. Ratney stated that he "did not know [he] was required to archive routine emails."[31]

Underscoring the importance of email correspondence in the OneVoice campaign, and calling into question the actions of DOS actors in deleting emails, one email reviewed by the Subcommittee revealed that an OVI official "was anxious not to put a lot of sensitive stuff in email, as instructed."[32] That OVI official "refused to participate in an interview with this Subcommittee," and as such, "it is unclear what he deliberately left out of the email or who instructed him to remain cryptic."[33] As at least one DOS official admitted to deleting emails, the question remains open.

"The record is clear, however, that OneVoice did inform at least two State Department officials of its political plans, and it did so during the grant period. The Department took no action in response, although it is unclear whether the officials in receipt of the plans reviewed them."[34] In a September 2014 email from former-Ambassador Marc Ginsberg, of The PeaceWorks Network

---

[27] *Id.* at 2.
[28] *Id.* at 5.
[29] *Id.* at 8.
[30] *Id.* at 4.
[31] *Id.*
[32] *Id.* at 20 n. 131.
[33] *Id.*
[34] *Id.* at 17.

6

**COMPLAINT, EXHIBIT A**

Foundation, to Consul General Ratney, Ginsberg sent "A Strategic Plan to Mobilize Centrist Israeli & Palestinian," "the culmination of months of work" that "presented a 'bold and definable' political option" that "outlined the political goals of OneVoice in the next Israeli election . . . : 'The [center-left] bloc has not been able to unify around a common message, a common agenda, or a strong leader. Our aim is to strengthen the bloc, rather than any one party, [and] in tandem weaken Netanyahu and his right wing parties.'"[35]

The press has reported on these events extensively, and the story has changed considerably over the months. For example, one source reported that "OneVoice briefly received a one-time grant for about $200,000 from the State Department."[36] We now know OneVoice received more than a one-time grant which totaled $349,276.

Further, earlier reports indicated that "[t]wo policy groups in Israel, OneVoice and Victory 15, are currently working together to promote **platforms** that reportedly 'are not friendly' to Netanyahu ahead of the upcoming election."[37] Now we know that the DOS grant funds were used to provide activists, build a database of voter contact information, double OVI's social media platform, and allow OVI to, as it did, hold itself out publically as a "partner" with DOS, all in connection with its V15 campaign. And far beyond mere "platforms" naively described as only "unfriendly" to Netanyahu, V15 was designed and implemented as a plan to "take [Netanyahu] down."

And while State Department spokesperson Jen Psaki defended the DOS grant funds by assuring that the grant "ended before there was a declaration of an Israeli election,"[38] we now know that the OVI built its V15 infrastructure with DOS grant funds — *and told DOS it was doing so*.

### Records Requested

For purposes of this Request, the term "record" is "any information" that qualifies under 5 U.S.C. § 552(f), and includes, but is not limited to, the original or any full, complete and unedited copy of any log, chart, list, memorandum, note, correspondence, writing of any kind, policy, procedure, guideline, agenda, handout, report, transcript, set of minutes or notes, video, photo, audio recordings, or other material. The term "record" also includes, but is not limited to, all relevant information created, stored, received or delivered in any electronic or digital format, e.g., electronic mail, instant messaging or Facebook Messenger, iMessage, text messages or any other means of communication, and any information generated, sent, received, reviewed, stored or located on a government *or private* account or server, consistent with the holdings of *Competitive Enterprise Institute v. Office of Science and Technology Policy*, No. 15-5128 (D.C. Cir. July 5, 2016)[39] (rejecting agency argument that emails on private email account were not

---

[35] *Id.* at 18.
[36] Hannah Groch-Begley, *Right-Wing Smear Baselessly Links Obama Admin to Anti-Netanyahu Campaign*, MEDIAMATTERS.ORG (Feb. 2, 2015, 5:59 PM), http://mediamatters.org/blog/2015/02/02/right-wing-smear-baselessly-links-obama-admin-t/202384.
[37] *Id.*
[38] Daily Press Briefing, U.S. Dep't of State (Jan. 28, 2016), *available at* http://www.state.gov/r/pa/prs/dpb/2015/01/236853.htm#ISRAEL.
[39] https://www.cadc.uscourts.gov/internet/opinions.nsf/75450CA390CB52C985257FE7005038BD/$file/15-5128-1622973.pdf.

7

**COMPLAINT, EXHIBIT A**

under agency control, and holding, "If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served.").

For purposes of this Request, the term "briefing" includes, but is not limited to, any in-person meeting, teleconference, electronic communication, or other means of gathering or communicating by which information was conveyed to one or more person.

For purposes of this Request, the term "DOS official" includes, but is not limited to, any person who is (1) employed by or on behalf of the DOS, any Mission of the United States, or any Delegation of the United States, in any capacity; (2) contracted for services by or on behalf of the DOS, any Mission of the United States, or any Delegation of the United States, in any capacity; (3) appointed by the President of the United States to serve in any capacity at or within the DOS, any Mission of the United States, or any Delegation of the United States; or (4) any such person's staff, agent or employee; all without regard to the component, bureau, or office in which that person serves.

For purposes of this Request, all sources, documents, letters, reports, briefings, articles and press releases cited in this Request are incorporated by reference as if fully set forth herein.

For purposes of this Request, the timeframe of records requested herein is January 1, 2013, to the date this Request is processed.

Pursuant to FOIA, 5 U.S.C. § 552, ACLJ hereby requests that the DOS respond to the following numbered requests and produce all responsive records within twenty (20) business days:

1. Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, agent or employee, referencing or regarding in any way PeaceWorks Network Foundation (PeaceWorks), OneVoice, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

2. Any and all records, communications or briefings sent, conveyed or otherwise transmitted by or between:

    a.    Michele Dastin-van Rijn;
    b.    Hilary S. Olsin-Windecker;
    c.    Andrew (Andy) C. Rabens;
    d.    Michael Ratney;

8

**COMPLAINT, EXHIBIT A**

e. James T. Rider;
f. Rachel D. Leslie;
g. Ya Lempert;
h. Jennifer Gavito;
i. Richard Buangan;
j. Laura Blumenfield;
k. Leslie T. Ordeman;
l. Frank G. Lowenstein,
m. Martin S. Indyk;
n. Ilan S. Goldenberg;
o. Daniel Lubetzky;
p. Hady Amr;
q. Kevin Kreutner;
r. Christina Taler;
s. Payton Knopf;
t. Jennifer Prystupa;
u. Yoni Amias;
v. Christina Forsting;
w. Sharon Alsoodani;
x. Adva V.;
y. Wasim Masri;
z. Darya Shakih/Darya Shaikh;
aa. Shaina Low;
bb. Joel Braunoid;
cc. Jonathan Prince;
dd. Harriet Green;
ee. Joel Fields;
ff. Usama Hasan;
gg. Graham Edwards;
hh. Greg Rack;
ii. Russell Mischon;
jj. Lawrence Radley;
kk. Denise Joseph;
ll. Sayyeda;
mm. Jamie Kessler;
nn. Katie Parsons;
oo. Laura Talinovsky;
pp. Elanit Green;
qq. Veronique M. Werber;
rr. Leonid Ostrovsky;
ss. Eltan Schiffman;
tt. Terry Meguid;
uu. Josh Rutstein;
vv. Baruch Spiegel;
ww. Laura E. Butzel;
xx. Ilia Alamo;

**COMPLAINT, EXHIBIT A**

yy. Megan E. Bell;
zz. Nurettin Aydogan;
aaa. Khaled Abohalima;
bbb. Cornelia Meyer;
ccc. Josh Nerpel;
ddd. Samer Makhlouf;
eee. Tal Harris;
fff. Polly Bronstein;
ggg. John Lyndon;
hhh. Mara Lee;
iii. Marc Ginsberg;
jjj. any staff, agent, or employee of any such person;
kkk. any other person representing, employed, or otherwise associated in any way with PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), 270 Strategies, and/or Darkenu; or,
lll. any other DOS official, staff or employee;

that references or regards in any way PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), 270 Strategies, and/or Darkenu, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

3. Any and all records, communications or briefings sent, conveyed or otherwise transmitted between Michael Ratney (former U.S. Consul General in Jerusalem), his staff, agent, or employee, and Tal Harris, Polly Bronstein, John Lyndon, Mara Lee, or Marc Ginsberg, their staff, agent, or employee, or any other person representing, employed, or otherwise associated in any way with PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, or that reference or regard in any way PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, including but not limited to electronic mail between Michael Ratney and Marc Ginsberg sent or received on September 30, 2014, and including but not limited to any electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any

**COMPLAINT, EXHIBIT A**

electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

4. Any and all records, communications or briefings sent, conveyed or otherwise transmitted between Assistant Secretary Anne W. Patterson, her predecessor Assistant Secretary Jeffrey David Feltman, any other Secretary (assistant, deputy, or acting assistant or deputy), and/or any other DOS official, staff, agent, or employee working within, under or located at the DOS Bureau of Near Eastern Affairs (BNEA), and any DOS official, staff, agent or employee working within, under or located at any other DOS component, office, bureau, mission, or delegation, or any other person outside the DOS, that reference or regard in any way PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

5. Any and all records, communications or briefings sent, received, forwarded, copied to, or reviewed by any DOS official, staff, agent, or employee, that reference or regard in any way the decision to or not to award grant funds that should be, would be, or in fact were awarded to PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

6. Any and all records, communications or briefings sent, received, forwarded, copied to, or reviewed by any DOS official, staff, agent, or employee, that reference or regard in any way the dollar amount of grant funds that should be, would be, or in fact were awarded to PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic

**COMPLAINT, EXHIBIT A**

mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

7. Any and all records, communications or briefings sent, received, forwarded, copied to, or reviewed by any DOS official, staff, agent, or employee, that reference or regard in any way how DOS would, should or in fact did respond to any press or media inquiry or criticism from any person or organization concerning the grant funds awarded to PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

8. Any and all records, communications or briefings sent, received, forwarded, copied to, or reviewed by any DOS official, staff, agent, or employee, that reference or regard in any way Benjamin "Bibi" Netanyahu in connection with the 2015 election or campaign for the 2015 election in Israel, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

9. Any and all records, communications or briefings sent, received, forwarded, copied to, or reviewed by any DOS official, staff, agent, or employee, that reference or regard in any way Michael Ratney's admitted deletion of emails and asserted belief that he was not required to archive emails, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

10. Any and all records, communications or briefings, including electronic mail, deleted by Michael Ratney, his staff, agent or employee, that address, reference or regard in any way Benjamin "Bibi" Netanyahu, the incumbent Israeli government, the Likud Party, the 2015 elections in Israel, any strategy relating thereto, PeaceWorks Network Foundation (PeaceWorks),

**COMPLAINT, EXHIBIT A**

OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, or that were sent by or to, received from, or in any way referenced, named or involved Tal Harris, Polly Bronstein, John Lyndon, Mara Lee, or Marc Ginsberg, their staff, agent, or employee, or any other person representing, employed, or otherwise associated in any way with PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, including but not limited to electronic mail between Michael Ratney and Marc Ginsberg sent or received on September 30, 2014, and including but not limited to any electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

11. Any and all records, communications or briefings sent, received, forwarded, copied to, or reviewed by any DOS official, staff, agent, or employee, that reference or regard in any way the U.S. Senate Homeland Security and Governmental Affairs Committee, Permanent Subcommittee on Investigations, Review of U.S. State Department Grants to OneVoice, or its Joint Staff Report issued on July 12, 2016,[40] including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

12. Any and all records, communications or briefings sent, received, forwarded, copied to, or reviewed by any DOS official, staff, agent, or employee, that reference or regard in any way any grant funds awarded to or requested by PeaceWorks Network Foundation (PeaceWorks), OneVoice, the OneVoice Movement, OneVoice Israel (OVI), OneVoice Palestine (OVP), Victory 15 (V15), and/or Darkenu, *on or after November 30, 2014*, including but not limited to electronic mail or message located on backup tapes, archives, any other recovery, backup, storage or retrieval system, DOS electronic mail or message accounts, non-DOS electronic mail or message accounts, personal electronic mail or message accounts, DOS servers, non-DOS servers, and personal servers, as well as any electronic mail or message carbon copied to agency account recipients, any electronic mail or message carbon copied to non-agency account recipients, any electronic mail or message forwarded to agency account recipients, any electronic mail or message forwarded to non-agency account recipients, and attachments to any electronic mail or message.

---

[40] *Joint Staff Report, supra* note 2.

**COMPLAINT, EXHIBIT A**

## CONCLUSION

As you are undoubtedly aware, President Obama's Freedom of Information Act Memorandum of January 21, 2009, declares:

> A democracy requires accountability, and accountability requires transparency. As Justice Louis Brandeis wrote, "sunlight is said to be the best of disinfectants." In our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government. At the heart of that commitment is the idea that accountability is in the interest of the Government and the citizenry alike.
>
> The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve. In responding to requests under the FOIA, executive branch agencies (agencies) should act promptly and in a spirit of cooperation, recognizing that such agencies are servants of the public.
>
> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.[41]

As such, if this Request is denied in whole or in part, ACLJ requests that, within the time requirements imposed by FOIA, you support all denials by reference to specific FOIA exemptions and provide any judicially required explanatory information, including but not limited to, a *Vaughn* Index.

Moreover, as explained in an accompanying memorandum, the ACLJ is entitled to expedited processing of this Request as well as a waiver of all fees associated with it. The ACLJ reserves the right to appeal a decision to withhold any information sought by this request and/or to deny the separate application for expedited processing and waiver of fees.

---

[41] PRESIDENT BARACK OBAMA, MEMORANDUM FOR THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES RE: FREEDOM OF INFORMATION ACT (Jan. 21, 2009), *available at* https://www.whitehouse.gov/the_press_office/FreedomofInformationAct.

**COMPLAINT, EXHIBIT A**

Thank you for your prompt consideration of this Request. Please furnish all applicable records and direct any responses to:

Jay Alan Sekulow, Chief Counsel
Colby M. May, Senior Counsel
Craig L. Parshall, Special Counsel
Benjamin P. Sisney, Senior Litigation Counsel
American Center for Law and Justice
201 Maryland Ave., NE
Washington, D.C. 20002-5703
(202) 546-8890
(202) 546-9309 (fax)
sekulow@aclj.org
cmmay@aclj-dc.org
bsisney@aclj.org

I affirm that the foregoing request and attached documentation are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Jay Alan Sekulow
Chief Counsel

Colby M. May
Senior Counsel

Benjamin P. Sisney
Senior Litigation Counsel

15

**COMPLAINT, EXHIBIT A**