UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>    Defendant. | Civil Action No. 16-2516 (JEB) |

**MEMORANDUM OPINION**

Although the Freedom of Information Act requires agencies to issue decisions on requests for documents within twenty working days, few departments consistently meet this deadline. Plaintiff American Center for Law and Justice believes that the State Department, in fact, has an actual policy or practice of not complying until the requester brings suit. In this case, ACLJ both seeks specific documents and asserts such a policy-or-practice claim. This Court initially dismissed the latter count without prejudice, but allowed Plaintiff to file an Amended Complaint. Once ACLJ did so, the Court permitted the claim to proceed, despite a renewed Motion to Dismiss. State now moves for partial summary judgment on this count alone. Concluding that the third time is the charm for Defendant, the Court grants the Motion.

**I.    Background**

The Court has already laid out the facts of the case in its prior Opinions, but briefly recounts background relevant to the specific question at issue here. See Am. Ctr. for Law & Justice v. Dep't of State, 249 F. Supp. 3d 275 (D.D.C. 2017) (ACLJ I); Am. Ctr. for Law & Justice v. Dep't of State, 254 F. Supp. 3d 221 (D.D.C. 2017) (ACLJ II). On July 25, 2016,

1

Plaintiff, a non-profit organization focused on governmental accountability, submitted a FOIA request to State for certain documents relating to its funding of a political organization that opposed Israeli Prime Minister Benjamin Netanyahu. See ECF No. 28 (Amended Complaint), ¶ 7. Three days later, the agency sent ACLJ a letter acknowledging receipt of the request. The letter also provided the Case Control Number, granted ACLJ's request for a fee waiver, and denied its request for expedited processing. Id., Exh. B at 1. It concluded by warning Plaintiff that "[u]nusual circumstances . . . may arise that would require additional time to process [the] request," but informing it that State would "notify [it] as soon as responsive material has been retrieved and reviewed." Id.

After five months of vainly waiting for such notification, Plaintiff filed this two-count suit, alleging that the Department (1) violated FOIA by not issuing a determination on its request within the statutorily mandated twenty days, and (2) has a policy or practice of flouting its FOIA obligations until requesters initiate litigation. See ECF No. 1 (Complaint), ¶¶ 24, 40. State moved to dismiss this second count, which was premised on at least seven instances where it did not provide requested documents until ACLJ filed a lawsuit. See Opp., Attach. 1 (Plaintiff Statement of Additional Material Facts), ¶ 2. The Court granted the Motion, finding that ACLJ had not pled a specific policy or practice that resulted in repeated violations of FOIA. ACLJ I, 249 F. Supp. 3d at 282. Because the Court dismissed without prejudice, ACLJ went back to the drawing board and sought to amend its Complaint.

According to the revised Complaint, Defendant engages in an "impermissible practice, policy, and pattern of refusing to issue a determination and/or produce responsive documents unless and until Plaintiff files suit." Am. Compl., ¶ 91. This second pitch, the Court found, had "patch[ed] the[] potholes" in the earlier Complaint. ACLJ II, 254 F. Supp. 3d at 226-27. This

time around, ACLJ had "explicitly articulate[d] that the policy or practice is State's refusal to respond unless and until suit is brought," an allegation that "no longer gesture[d] at some nebulous policy or practice." Id. at 227. The Court, accordingly, granted Plaintiff's Motion for Leave to File an Amended Complaint.

State now takes a third swing at ACLJ's policy-or-practice claim, arguing that the policy of which ACLJ complains simply does not exist. The Department does not deny that it has trouble meeting its FOIA deadlines, but asserts that any delay is an unavoidable consequence of increased FOIA obligations and limited resources. Plaintiff opposes the Motion and concomitantly filed its own Motion for Discovery pursuant to Federal Rule of Procedure 56(d). Both Motions are now ripe.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

3

56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a non-movant believes that summary judgment is premature, she may file a motion for discovery under Rule 56(d). The motion must provide "specific reasons demonstrating the necessity and utility of discovery to enable her to fend off summary judgment." Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989). Bare allegations are not enough; the non-movant must show "what facts [s]he intend[s] to discover that would create a triable issue" of fact. Byrd v. EPA, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999). The decision whether to grant a 56(d) motion lies within the discretion of the district court. Exxon Corp. v. FTC, 663 F.2d 120, 126 (D.C. Cir. 1980).

FOIA cases typically are decided on motions for summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, the Court may accept an "agency's affidavits, without pre-summary judgment discovery, if the affidavits are made in good faith and provide reasonably specific detail concerning the methods used to produce the information sought." Broaddrick v. Executive Office of the President, 139 F. Supp. 2d 55, 64 (D.D.C. 2001). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

## III. Analysis

In seeking summary judgment, State avers that it does not have a policy or practice of pushing off FOIA requests (from ACLJ or other requesters) until litigation, much less a policy egregious enough to warrant injunctive relief. ACLJ, unsurprisingly, disagrees and argues that it

4

can prove the existence of such a policy or at least raise an issue for trial with the aid of discovery. The Court first addresses the summary-judgment Motion and, finding ACLJ's claim wanting, then concludes that Plaintiff is also not entitled to relief under Rule 56(d).

A. Policy-or-Practice Claim

ACLJ claims that State refuses to issue a determination on FOIA requests until organizations file a lawsuit. The Act requires an agency to "determine within 20 days . . . after the receipt of any . . . request whether to comply with such request" and immediately notify the requester about its decision. See 5 U.S.C. § 552(a)(6)(A)(i). "In unusual circumstances," the agency can extend the deadline by a maximum of ten days, but it must provide the requester "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." Id. § 552(a)(6)(B)(i). Despite the clear statutory language, agencies have had difficulty meeting the FOIA deadline since it was added in 1974. From the beginning, they have felt that having to respond to requesters in such a short timeframe would engender "the very real problem of spreading available resources too thin." H. Rep. No. 93-876, at 137 (1973) (Letter from Malcolm D. Hawk, Acting Asst. Att'y Gen., Dep't of Justice). Congress, nevertheless, has insisted that agencies adhere to the strict timetable and has provided requesters a private right of action when the agency fails to perform its statutory duty. See 5 U.S.C. § 552(a)(4)(B). When this occurs, "the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n, 711 F.3d 180, 189 (D.C. Cir. 2013).

When an agency's non-compliance shifts from a singular instance to a "policy or practice [to] impair the party's lawful access to information," however, a court can order broader

equitable relief. Payne Enterp., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988); cf. Citizens for Responsibility & Ethics in Wash. v. DOJ, 846 F.3d 1235, 1241 (D.C. Cir. 2017) (courts have "broad equitable authority" to enforce FOIA). Standing in such cases to challenge and receive relief from an agency policy or practice is limited "to the FOIA requests submitted by [the p]laintiff actually at issue in this case." Cause of Action Inst. v. Eggleston, 224 F. Supp. 3d 63, 71 (D.D.C. 2016). To warrant equitable relief, a plaintiff must show that the agency (1) repeatedly violates FOIA through a (2) policy or practice that is (3) "sufficiently outrageous." ACLJ II, 249 F. Supp. 3d at 281-82. As the agency does not dispute that its delays contravene the Act, the Court focuses on the last two elements.

1. *Policy or Practice*

ACLJ argues that State cannot "demonstrate the absence of an impermissible pattern, practice and/or policy . . . of refusing to issue a determination and/or produce responsive documents unless and until Plaintiff files suit." Opp. at 7. It further suggests that this policy is targeted especially toward Plaintiff. Id. As circumstantial evidence of such a policy, ACLJ points to Defendant's chronic FOIA understaffing and undertraining, as well as its admitted policy of prioritizing FOIA requests in litigation over others. State denies it has any intentional policy to violate FOIA and points to its recent efforts to address its delays.

Reviewing the undisputed record, the Court finds no evidence that State has any policy, formal or otherwise, of forcing requesters to file suit before releasing material. No one would deny that Defendant is habitually late in providing determinations to requesters, but "while tardiness would violate FOIA, it only becomes actionable when 'some policy or practice' also undergirds it." ACLJ I, 249 F. Supp. 3d at 283 (quoting Muttitt v. Dep't of State, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)). "[D]elay alone, even repeated delay, is not the type of illegal policy or

practice that is actionable under Payne." Id. (quoting Cause of Action Inst., 224 F. Supp. 3d at 72). A policy-or-practice plaintiff must, rather, show that the agency's actions are "done to delay requests." Cause of Action Inst., 224 F. Supp. 3d at 71-72. State supported its Motion for Partial Summary Judgment with the declaration of Eric Stein, the Director of the Department's Office of Information Programs and Services, which handles FOIA requests. See MSJ, Exh. A. As Director of IPS, Stein has personal knowledge of "all of the Department's policies and practices, both formal and informal, concerning responses to FOIA requests." Id., ¶¶ 3,5. He avers that Defendant does not have any policy or practice of FOIA non-compliance but instead suffers from a "substantial FOIA caseload and backlog" made worse by "high FOIA litigation demands." Id., ¶ 14. Indeed, the Department's annual reports substantiate Stein's statements.

State began 2016 with 11,731 pending requests and processed 15,482 throughout the year. See MSJ, Exh. B (2016 Annual Report) at 11. It still ended up in the hole, however, because it received a whopping 27,961 requests that year. Id. Going into 2017, therefore, State had 24,210 pending requests — more than double what it started the year with. Id. It is hardly shocking, then, that Defendant rarely meets the twenty-day FOIA-response deadline. When State processes FOIA requests, they "are placed in different processing tracks" (simple, complex, or expedited) "on the basis of the complexity of the search and/or review of the responsive material." Id. at 5. On average in 2016, it took the Department almost a full calendar year (342 days) to process a simple request and 517 days for a complex request. Id. at 22. Even taking into account that the average can be misleading because requests can vary widely in the number of documents sought, the Department is still woefully behind schedule. The median number of days for a simple request was 166, with 392 needed for a complex one — roughly 8 and 20 times longer than FOIA allows. Id. Although a requester can ask for expedited processing, it likely

7

will not help very much; those requests took State an average of 139 days to process. Id. While these statistics are clear evidence of the Department's non-compliance with FOIA, the numbers do not lead to the conclusion that litigation is the only hope for requesters. State "is engaged in approximately 108 FOIA litigation cases," which is roughly 1% of the total requests. See Stein Decl., ¶ 17. The vast majority of FOIA requests, then, are completed without judicial involvement.

Trying another tack, Plaintiff argues that State cannot truly mean to comply with FOIA because it "intentionally understaff[s] its FOIA department." Opp. at 8. Although the agency has roughly 130 full-time FOIA staff members, ACLJ latches onto Defendant's admission that, because of a Department-imposed hiring freeze, the FOIA arm of State has 18 job vacancies, and there are another 13 FOIA support positions currently unfilled. See Stein Decl., ¶¶ 37-38. Yet viewed within the context of the affidavit, State's "concession" is evidence that it is trying to bring itself into FOIA compliance, not "intentionally understaff[ing] its FOIA department." Opp. at 8. Once State received authorization for 25 new FOIA positions, it quickly filled "10 positions directly supporting FOIA." Stein Decl., ¶ 36. It is also actively "pursuing alternative means to increase its number of reviewers using existing Department resources," including reassigning Foreign Service Officers to assist in FOIA processing. Id., ¶ 38. This evidence strongly supports Defendant's assertion that it is its FOIA backlog and caseload — not lack of effort or a specific policy — that makes it difficult (if not impossible) to comply with the statutory deadlines.

According to ACLJ, these "efforts" are merely a façade because they have not "actually resulted in any increase in the rate of FOIA requests processed each year and/or response time to FOIA requests." Opp. at 9. Indeed, between 2015 and 2016, for example, State's wait times to process simple requests did increase from 111 to 342 days. See MSJ, Exh. C (2015 Annual

8

Report) at 24; 2016 Annual Report at 22. Complex requests marginally slowed down as well, going from 511 days to 517. Id. These numbers, however, comport with State's own explanation — that delays are due to "the massive FOIA caseload facing the Department and the complicated, laborious review process that the Department must undertake in responding to many of the FOIA requests it receives," in addition to increased litigation. See MPSJ at 11-12. In fact, total processed requests increased by 10.5% between 2015 and 2016, and, in this past year, the agency's backlog decreased by a substantial 52%. See 2015 Annual Report at 15; 2016 Annual Report at 13; Stein Decl., ¶ 28. In absolute terms, therefore, the agency is showing some improvement. Neither is the Department alone in facing this issue. See Opp., Exh. 1 (2016 Office of Inspector General Report) at 6 (noting that "few agencies are able to meet the 20-day deadline for complex requests").

The Court also rejects ACLJ's argument that State's practice of prioritizing FOIA requests in litigation over others is somehow evidence of a policy to wait until a requester files suit to process requests. Faced with limited resources, the agency must decide which FOIA requests get priority. It is true that cases in litigation and expedited requests are given top billing, and then simple or complex requests are processed on a first-in, first-out basis. See MPSJ, Exh. D (2017 Chief FOIA Officer Report) at 13. Prioritizing litigation cases, however, is not "an improper litigation-forcing policy," MPSJ at 12 n.3, but part of the statutory scheme. See Daily Caller v. Dep't of State, 152 F. Supp. 3d 1, 10 (D.D.C. 2015) ("[T]his twenty-day deadline serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request."). In fact, it seems that litigation — such as the five suits brought by ACLJ — only exacerbates delays. For example, current court orders require the agency to process a minimum of 9,100 pages every month across 16 cases. See Stein Decl., Exh 1 at 1. In

another 18 cases, the Department does not have a monthly minimum but must process some documents on a monthly to bi-monthly basis. Id. at 1-2. Four more cases are in the pipeline. Id. at 2-3. FOIA suits cost the agency over $19 million in 2016, though it only collected $1,373.55 in fees from requesters. See 2016 Annual Report at 31-32. In addition to the demands that all litigation imposes, once State is under a court-ordered schedule, it has to divert resources and personnel from processing non-litigation requests to court-ordered processing and production. See 2017 Chief FOIA Officer Report at 2. This resource split is no small matter; in 2016 the Department had "to allocate about 80% of its FOIA resources to meet these court-ordered productions." Id. Though State has been able to satisfy its litigation obligations, "these accomplishments were done at the expense of all other requesters seeking information from the government. The Department's FOIA backlog increased from 10,045 cases in FY 2014 to 28,505 at the beginning of FY 2016." Stein Decl., ¶ 20.

Finally, to the extent ACLJ claims that State specifically targets it in connection with FOIA delays, see Opp. at 7, the numbers also belie that conclusion. According to Plaintiff, "Regardless of whether Defendant is given 1 month or 8 months — i.e. up to 286 days," it does not respond (other than the perfunctory acknowledgment-of-receipt letter) to ACLJ requests until litigation. See Opp. at 2. But, in the context of overall response times, 286 days — the high end of ACLJ's wait time — is still two months shorter than the Department's average time for all simple FOIA requests. The statistics thus do not bear out ACLJ's claim that State treats it differently. Perhaps Plaintiff would prefer State to move faster in filling open positions and processing requests, but the Department's pace does not amount to a "willful and intentional dereliction of its FOIA responsibilities." Id. at 9.

### 2. *Sufficiently Outrageous*

Nor does the policy that ACLJ describes rise to the level necessary to warrant equitable relief. See Judicial Watch, Inc. v. Dep't Homeland Security, 211 F. Supp. 3d 143, 147 (D.D.C. 2016) (noting that Payne and "subsequent cases recognizing policy and practice claims involved more egregious, intentional conduct than mere delay"); ACLJ I, 249 F. Supp. 3d at 286 ("'[O]nly a rare instance of agency delinquency' would warrant an injunction.") (quoting CREW, 846 F.3d at 1246).

Policy-or-practice claims find their root in two main cases, Payne and Long v. IRS, 693 F.2d 907 (9th Cir. 1982). In the former, Air Force officers refused to hand over copies of bid abstracts to Payne, a company that sells information and advice about government contracts to prospective contractors. See 837 F.2d at 487-88. The Air Force, afraid that releasing the information might result in higher bid prices from contractors in the future, repeatedly denied Payne access to the documents for over two years, even after the Secretary of the Air Force demanded their disclosure. Id. at 487. Payne filed suit and the D.C. Circuit held that the company had a right to equitable relief based on "[t]he Secretary's inability to deal with [Air Force] officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification." Id. at 494. In reaching its decision, the Payne court looked to Long, another case of inexcusable agency non-compliance. The plaintiffs there sought data documents from the IRS. The agency conceded that the documents should be released but outright refused to do so until requesters filed a lawsuit. Long, 693 F.2d at 908. Not only did the IRS deliberately delay release of documents it had already decided should be disclosed, but it also did so with the intent of "forcing the [plaintiffs] to file FOIA lawsuits." Id. Only after faced with litigation did the agency "voluntarily" release the documents, id., all the while "retain[ing]

11

the right to" do the same with similar documents in the future. Id. at 910. The Ninth Circuit held that such an "abuse" of FOIA's statutory scheme warranted injunctive relief. Id.

The conduct that ACLJ accuses State of here, even if true, is not "sufficiently outrageous" as it was in Payne and Long to necessitate an injunction. ACLJ I, 249 F. Supp. 3d at 281 (quoting Payne, 837 F.2d at 494). First, unlike the Air Force or IRS, State is not refusing "to end a practice for which it offers no justification," Payne, 837 F.2d at 494, or using "FOIA offensively to hinder the release of non-exempt documents." Long, 693 F.2d at 910; see S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv., 2008 WL 2523819, at *6 (E.D. Cal. June 20, 2008) (injunction appropriate when agency did not justify repeated FOIA delays). State has, by contrast, provided reasons for its delays that suggest it is impossible for it to meet its FOIA demands. Further, in both Payne and Long, the agency admitted that the documents should be released but intentionally decided not to. Here, State has not even made its determination about whether to disclose ACLJ's requested documents. See Cause of Action, 224 F. Supp. 3d at 72 (finding that plaintiff had not alleged policy-or-practice claim in part because "unlike the plaintiff in Payne Enterprises, Plaintiff d[id] not allege that the Agency Defendants have decided, even initially, to not produce any records that should be produced"). An agency's intransigence in processing requests could give rise to a "viable" policy-or-practice claim, Muttitt v. U.S. Central Command, 813 F. Supp. 2d 221, 231 (D.D.C. 2011), but "inevitable but unintended delay attributable to lack of resources" is insufficient to support one. See Judicial Watch, 211 F. Supp. 3d at 146. "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." Sack v. CIA, 53 F. Supp. 3d 154, 163 (D.D.C. 2014) (citation omitted).

In an attempt to liken its case to Payne and Long, Plaintiff points to a 2016 Officer of Inspector General Report that identified "numerous deficiencies within the State Department in responding to FOIA requests in a timely and lawful manner," Opp. at 3; see Opp. Exh. 1, but the OIG report and recommendations actually cut against ACLJ. State has not despondently thrown up its hands and ignored the OIG's recommendations. Rather, it has implemented several changes to its FOIA process over the past couple of years in an effort to reduce its backlog and respond in more timely fashion. See 2017 Chief FOIA Officer Report at 14. First, the agency has decided to post more documents to its FOIA website, reducing the number of redundant requests. Id. Second, it has requested additional resources and increased its budget for FOIA from $18 million in 2014 to $32.5 million in 2016. See Stein Decl., ¶ 31. Defendant has used the extra money to train more staff and create new standard operating procedures to complete expedited requests more quickly. See 2017 Chief FOIA Officer Report at 14. OIG has approved of these efforts and lauded State's "'success[es]' in implementing its recommendations" in accordance with the 2016 OIG report. See MPSJ at 13 n.4. The Court expects that the Department will continue to find ways to increase FOIA compliance. Weighing State's non-compliance against its good-faith efforts to come up with ways to reduce its backlog and respond promptly, as well as the absence of malice in its delays, the Court sees no need for an injunction here. See Our Children's Earth Found. v. Nat'l Marine Fisheries Serv., Nos. 14-4365, 14-1130, 15-2558, 2015 WL 6331268, at *9 (N.D. Cal. Oct. 21, 2015) (granting declaratory relief but not issuing injunction when "ongoing efforts of the [agency] to improve suggested that intervention by the Court may not be necessary to fix ongoing violations"). State has begun to address its FOIA backlog and has implemented procedures to improve its response time. Absent some

evidence that the agency is deliberately trying to shirk its FOIA obligations or other ill intent, ACLJ is not entitled to equitable relief.

B. Motion for Discovery

In an attempt to save its policy-or-practice claim, ACLJ has also submitted a Motion for Discovery. Under Rule 56(d) (formerly 56(f)), a court may deny or defer a summary-judgment motion when a non-movant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion. The implication, then, is that the "requested discovery would alter the court's determination," Cheyenne Arapaho Tribes of Ok. v. United States, 558 F.3d 592, 596 (D.C. Cir. 2009), rather than serve as a "fishing expedition." Graham v. Mukasey, 608 F. Supp. 2d 50, 54 (D.D.C. 2009) (citation omitted). "[M]erely asserting that the evidence supporting a [party's] allegation is in the hands of the [opposing party] is insufficient to justify" granting a 56(d) motion. Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993) (alterations in original) (internal quotation marks and citation omitted).

ACLJ contends here that it "is entitled to explore the actual policies and practices currently implemented and/or followed by Defendant, whether formal or informal, regarding the Department's FOIA practices, both general and as applied specifically to Plaintiff's requests." See Mot. for Discovery, Attach. 1 (Declaration of Abigail A. Southerland), ¶ 3. The organization accordingly asks for discovery regarding a broad array of information regarding State's (1) "FOIA practices, including any such documents specifically concerning treatment of Plaintiff"; (2) "issuance of its initial letter to FOIA requestors"; (3) "FOIA backlog"; (4) prioritization of FOIA requests; (5) funding for FOIA operations and any plans to increase the Department's FOIA resources; and (6) training programs for FOIA personnel. Id. State argues

that because FOIA cases are typically decided without discovery, ACLJ is not entitled to this information absent some showing that the agency's evidence was put forth in bad faith.

      At the outset, the Court rejects Defendant's presumption that ACLJ is not entitled to discovery simply because this is a FOIA case. See Def. Reply at 8. State correctly notes that discovery is generally "disfavored" in mine-run FOIA cases. Justice v. IRS, 798 F. Supp. 2d 43, 47 (D.D.C. 2011). Yet, in a typical FOIA case the question is whether the "agency has conducted a thorough search" and given "reasonably detailed explanations why any withheld documents fall within an exemption." Carney v. DOJ, 19 F.3d 807, 812 (2d Cir. 1994). "The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether" the agency has met its FOIA obligations. Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982). Indeed, the statute itself instructs courts to "accord substantial weight to an affidavit of an agency concerning the agency's determination" of exemptions and reproducibility. See 5 U.S.C. § 552(a)(4)(B). That does not mean, however, that agencies get to phone it in when defending their FOIA conduct. Courts require that any supporting affidavits are "relatively detailed[,] . . . nonconclusory[,] and . . . submitted in good faith." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978). Relying on affidavits when deciding whether the agency has properly searched or withheld documents allows courts to balance FOIA's overarching purpose of disclosure with the Executive's need to prevent "adverse effects [that] might occur as a result of public disclosure of a particular" sensitive record. Weissman v. CIA, 565 F.2d 692, 697 n.10 (D.C. Cir. 1977) (quoting S. Rep. No. 93-1200, at 12 (1974)).

The scales may shift, however, in a FOIA policy-or-practice suit, in which confidentiality is not typically at issue. While a court may still accord agency affidavits a presumption of good faith in such cases, persistent and unexplained delays in processing FOIA requests may "raise a sufficient question of bad faith on the part of the government . . . to warrant further exploration through discovery." Citizens for Responsibility & Ethics in Wash. v. DOJ, No. 05-2078, 2006 WL 1518964, at *2-3 (D.D.C. June 1, 2006) (permitting limited discovery when "even after a full round of briefing and a motions hearing, there still remain[ed] unanswered questions regarding the government's position that what occurred . . . [was] ordinary and normal [FOIA] processing"). In such cases, a plaintiff may need to conduct narrow discovery on the agency's "policies and practices for responding to FOIA requests, and the resources allocated to ensure its compliance with the FOIA time limitations." Gilmore v. Dep't of Energy, 33 F. Supp. 2d 1184, 1190 (N.D. Cal. 1998).

Unfortunately for ACLJ, this is not one of those cases. As the Court has just explained, State convincingly avers that its "policy is to fully comply with the FOIA and to continue improving its FOIA operations." Stein Decl., ¶ 7. The Court has agreed with Stein that Defendant "does not have a policy or practice, either formal or informal, of refusing to respond to FOIA requests or otherwise refusing to comply with the FOIA until a requester files a lawsuit." Id., ¶ 8. Plaintiff nonetheless argues that these are just "bald assertions of fact and conclusory statements," Opp. at 5, which it cannot rebut without discovery. The Court concludes otherwise.

Given the undisputed facts in the record, Plaintiff's request seems little more than the proverbial fishing expedition. ACLJ claims it requires discovery because "Defendant asserts in conclusory fashion that it does not maintain a policy of intentionally violating FOIA . . . but fails

to provide a single policy of the Department regarding its FOIA practices." Mot. for Discovery,

¶ 3.a. Not so. The 2017 Chief FOIA Officer Report clearly outlines State's FOIA policy:

> The Department makes every effort to respond to FOIA requests within the statutory response period. In an effort to respond to all requests in the most comprehensive manner, the Department processes FOIA requests incrementally and makes interim responses to requesters as document searches and reviews are completed rather than waiting until all responsive records are located and reviewed. To implement its statutory responsibilities under FOIA, the Department has established a centralized and comprehensive FOIA Program, in which a single office receives and coordinates the processing of FOIA requests made to the Department. Whether that coordination is with the Department's domestic offices and bureaus, its posts overseas, other federal agencies, or foreign governments, the process is managed by the FOIA Program in the Bureau of Administration's Office of Information Programs and Services (A/GIS/IPS).

2017 Chief FOIA Officer Report at 1.

As discussed above, moreover, State's disavowal of any litigation-forcing policy is not based on "bald assertions of fact and conclusory statements," Opp. at 5, but is instead supported by hard data corroborating its claim that it must handle immense FOIA obligations with limited resources. ACLJ has not provided any evidence to suggest bad faith on the part of the Department, and it is hard to see what information Plaintiff would hope to find that would matter to the litigation at hand. Plaintiff's 56(d) Motion for Discovery will, therefore, be denied.

**IV.    Conclusion**

For these reasons, the Court will grant Defendant's Motion for Partial Summary Judgment on Count II and deny Plaintiff's Motion for Discovery. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 30, 2018